## CIRCUIT COURT OF CHARLOTTE COUNTY

Commonwealth of Virginia

    v.

David M. Guill et al.

### Case No. CL12-116

By Judge Robert P. Doherty, Jr.

### November 21, 2014

This action is brought by the Commonwealth of Virginia, pursuant to § 15.2-1643, Code of Virginia (1950), as amended, for the purpose of determining whether the Charlotte County court facilities are insecure, out of repair, or otherwise pose a danger to the health, welfare, or safety of court employees or the public, and, if so, to remedy the situation. The Museum of Charlotte County, Inc., has filed a Motion to Intervene as a party defendant, pursuant to Rule 3:14, Rules of the Supreme Court of Virginia, for the purpose of protecting its leasehold interest in the old jail building on the courthouse square, where its museum is housed. In order to successfully intervene, the museum must assert some right involved in the suit. *Hudson v. Jarrett*, 269 Va. 24, 32-33 (2005). It has not done so.

Rule 3:14 requires that the claim or defense asserted by the Intervenor be germane to the subject matter of the proceeding. The subject matter of this proceeding is the determination and correction or repair if necessary, of dangerous or insecure conditions existing with the county court facilities. Intervenor has filed to protect a property right, a matter not before the Court in this case. The Motion to Intervene will be denied.

December 16, 2014

Both the Plaintiff Commonwealth of Virginia and the Defendant individual members of the Board of Supervisors of Charlotte County agreed that the Charlotte County court facilities were and are inadequate and in need of upgrading. The problem was studied and, when no action was taken, the Court entered an order to show cause why a mandamus should not issue commanding the Defendants to cause the court facilities to be corrected to satisfy statutory standards of suitability, security, safety, and repair for the benefit of both the court employees and the public. Attempts at settlement failed and, upon the last impasse, the Court ordered the Defendants to appoint the statutory five-member panel, three of whom were to be architects or professional engineers, to review the court facilities in question and make recommendations to the Board of Supervisors and to the Court about any construction or repairs deemed necessary.

The Supervisors appointed a five-member panel that consisted of a sitting member of the Board of Supervisors, a brother-in-law of another Supervisor, two employees of the Commonwealth of Virginia, one of whom had previously declared as acceptable a plan of construction and repair proposed by Defendants in settlement negotiations and rejected by the Commonwealth, and a fifth citizen. The Board proposed that the panel attend a public forum on the courthouse, be given cost estimates and the plans developed by the Board, a letter from the Virginia Department of Historic Resources about historic issues, and a copy of a version of the mandamus statute not in existence at the time of the filing of this action. The argument of the Board included their feeling that "it is reasonable and appropriate for the County to have a voice on the panel," presumably to advance the plan it proposed in settlement negotiations, and to negate any counter-proposal of the Commonwealth. The Commonwealth has objected to the acceptance of this panel, arguing that it is like having a biased jury decide the issues in this case.

### Five Member Panel

Contrary to the Court's admonitions, many aspects of the settlement negotiations were divulged by the parties in their written and oral arguments. Having heard them, the Court will point out some basic misunderstandings by both parties concerning § 15.2-1643, Code of Virginia (1950), as amended. The statutory scheme involving that code section and the upgrading and maintenance of court facilities does not call for the formation of a jury to make decisions for the Court. Instead, it requires that an investigatory and advisory panel be appointed, three of whom must be architects or professional engineers, "to review the court facilities in question and make recommendations to the local governing body and circuit court judge assigned by the Chief Justice concerning the construction or repairs

deemed necessary." They will make recommendations, which the Court may accept or reject in whole or in part. They are no different than the standard, unbiased, independent Court experts, representing neither side and owing allegiance only to their conscience and the Court. Their job is to give correct and accurate facts to the Court and the Board of Supervisors based on their observations, investigation, education, and common sense. They are not partisan. From their report and from other evidence presented at trial, the Court will decide upon a plan to correct the problems with the Charlotte County court facilities. Not being an architect or professional engineer, the Court will be required to rely heavily upon the opinions of experts, the evidence and testimony presented, the facts as determined, and the argument and assistance of counsel to formulate the necessary plan.

When the legislature enacted § 15.2-1643, it did so intending to present a plan of action to be taken by localities and the Commonwealth when those responsible parties could not agree on what was necessary to keep their local courthouse facility safe, secure, in good repair, and suitable for the purposes for which it was intended. Recognizing the need for the public to have confidence in the integrity of the process, it was their intention that the panel appointed by the Board of Supervisors be independent, unbiased, fair, not having previously formed an opinion, and not having been influenced or prejudiced by anyone. The legislature intended the process to be proper in every respect and for the public to view it as such. Basic fairness must prevail in courts and in every action taken by a legislative body, in this instance the Board of Supervisors. The avoidance of even the appearance of impropriety is necessary for the continuation of public confidence in our courts, our elected officials, and our government. The Board of Supervisors appointed the statutory panel with a misunderstanding of § 15.2-1643. The result was a potentially biased panel that could easily appear to be improper to many citizens of this Commonwealth and of Charlotte County. It appears biased to the Court.

Accordingly, the Court declares the appointment of the panel as it is now constituted, void *ab initio*. The Court directs the Board of Supervisors of Charlotte County to reappoint the statutory panel called for by § 15.2-1643, as previously ordered by this Court and in keeping with the spirit and intent of the legislature when they enacted this legislation, as clarified by this letter opinion. The new panel should not include the Plaintiff or its employees or their relatives, nor should it include the Defendants or their employees or either of their relatives. The Board will have thirty days from the date of this letter opinion to reappoint the new panel. The new panel should be prepared to present a progress report ninety days after their appointment.

## Cost

The cost of the repairs and/or construction as may be considered or contemplated by the parties is not one of the statutory factors to be received, studied, or reported on by the panel. Notwithstanding that finding, the panel

cannot investigate or report in a vacuum, and the case will not be tried in a vacuum. Cost information will not be given to or made available to the new panel. However, it is possible at trial for someone to open the door accidentally to cost as factor, an example being the recommendation by the panel of the use of unusually costly building materials in the project. Should something like that occur, the Court would expect to hear argument of counsel on that issue.

### Proposed Construction or Repair Plans

Both parties have alluded to the existence of pre-prepared set or sets of plans for the courthouse repair and/or construction. The Court is aware that these plans have been discussed by the parties but not agreed upon. There is no reason why any previously written proposed construction or repair plans cannot be delivered to the panel, provided it is done without cost analysis, or partisan comments of any sort. The panel may find the plans helpful and may alter them and/or consider them the basis for some or all of their recommendations; or they may ignore them.

### Applicable Version of the Code Section

When this suit was filed, § 15.2-1643 authorized the Court to "require a county or city to erect a replacement or additional courthouse. . ." if "such replacement or additional courthouse has been recommended by the panel. . . ." In 2012, the same year this suit was filed but after its filing, the legislature amended § 15.2-1643 by eliminating the language authorizing the Court to order the construction of a new courthouse, and by adding the following language: "Nothing in this section shall be construed to authorize a circuit court to require that an additional or replacement courthouse be constructed." The Plaintiff believes that the law in effect at the time of the filing of the suit controls this case, and the Defendant contends that the law as it was amended during the course of litigation is binding on the parties.

A statute that affects the outcome of this controversy is § 8.01-1, Code of Virginia (1950), as amended. It says that changes in legislation will apply to pending lawsuits except "if in the opinion of the court any particular provision (i) may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) or (ii) may cause the miscarriage of justice." What is meant by the phrase substantive rights is explained by the Virginia Supreme Court in the case of *Shiflet v. Eller*, 228 Va. 115, 120-21 (1984). It says that a pending cause of action, as opposed to a right of action, cannot be changed by new legislation. In this case, the cause of action, proven upon the presentation of appropriate evidence, is the Commonwealth's right to the repair and/or alteration of existing court facilities or, in the alternative, upon recommendation of the five member panel, to the construction of an additional or replacement courthouse. It

is a right existing at the time of the filing of the lawsuit and is, therefore, vested. It is a substantive right. Because the amendment to § 15.2-1643 could materially change the substantive right of the Commonwealth in its request for the construction of an additional or replacement courthouse if circumstances so dictated, the amendment will not apply to this case.

## Admonishment

Based on the unusual partisanship displayed in the appointment of the original five member panel and the blatant attempt to influence the results of their investigation, both parties are admonished to take no action that would influence the new panel to be appointed, directly, indirectly, through agents, or in any other manner.